**2008 BNH 017**
_____

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| In re: | Bk. No. 05-11723-JMD |
| | Chapter 7 |
| Karen L. Laflamme, | |
|        Debtor | |
| | |
| Olga L. Bogdanov, | |
| Chapter 7 Trustee, | |
|        Plaintiff | |
| | |
| v. | Adv. No. 07-1210-JMD |
| | |
| Karen L. Laflamme, | |
|        Defendant | |

*Taruna Garg, Esq.*
*Murtha Cullina LLP*
*Boston, Massachusetts*
*Attorney for Plaintiff*

*Michael Burke, Esq.*
*Law Office of Gould and Burke*
*Meredith, New Hampshire*
*Attorney for Defendant*

## MEMORANDUM OPINION

### I.   INTRODUCTION

The Court has before it cross-motions for summary judgment. Olga L. Bogdanov (the "Plaintiff" or the "Trustee"), the chapter 7 trustee of the estate of Karen L. Laflamme (the "Debtor" or the "Defendant"), commenced this adversary proceeding seeking recovery of commissions received by the Debtor on account of her former employment as a real estate

broker.  Plaintiff alleges these real estate commissions are property of the Debtor's bankruptcy estate and are subject to turnover under §§ 541 and 542 of the Bankruptcy Code.[1]  On July 14, 2008, Plaintiff filed a motion for summary judgment (Doc. No. 28) ("Plaintiff's SJ Motion") arguing the commissions were earned prepetition even though they were received postpetition, and, thus, were property of the estate.  On July 15, 2008, Defendant filed a motion for summary judgment (Doc. No. 29) ("Defendant's SJ Motion") arguing that her employment agreement with her former real estate office precluded a finding that she had a right to the commissions prepetition.  Defendant also argues that, under § 348(f)(1)(A), the commissions were no longer property of the estate upon conversion of her chapter 13 case to chapter 7 since the Debtor was allowed to use the proceeds during the administration of her chapter 13 case and the money was not in her possession on the date of conversion.  On September 23, 2008, after a hearing on the motions, the Court took the matter under advisement.

This Court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. §§ 1334 and 157(a) and the "Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the District of New Hampshire," dated January 18, 1994 (DiClerico, C.J.).  This is a core proceeding in accordance with 28 U.S.C. § 157(b).

**II.  DISCUSSION**

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, a summary judgment motion should

---

[1] In this opinion the terms "Bankruptcy Code," "section" and "§" refer to title 11 of United States Code, 11 U.S.C. § 101 et seq., prior to enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8.

be granted only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  "Genuine," in the context of Rule 56(c), "means that the evidence is such that a reasonable jury could resolve the point in favor of the nonmoving party."  Rodriguez-Pinto v. Tirado-Delgado, 982 F.2d 34, 38 (1st Cir. 1993) (quoting United States v. One Parcel of Real Property, 960 F.2d 200, 204 (1st Cir. 1992)).  "Material," in the context of Rule 56(c), means that the fact has "the potential to affect the outcome of the suit under applicable law."  Nereida-Gonzalez v. Tirado-Delgado, 990 F.2d 701, 703 (1st Cir. 1993).  Courts faced with a motion for summary judgment should read the record "in the light most flattering to the nonmovant and indulg[e] all reasonable inferences in that party's favor."  Maldonado-Denis v. Castillo-Rodriguez, 23 F.2d 576, 581 (1st Cir. 1994).  When faced with cross motions for summary judgment, courts apply the same standard to the respective non-moving parties.  Medeiros v. Vincent, 431 F.3d 25, 29 (1st Cir. 2005).

Although neither party disputes the documents included by the other party in the summary judgment record, this matter is before the Court on cross motions for summary judgment, not on a stipulated factual record.  Accordingly, the Court may only decide whether, on the summary judgment record, either party deserves judgment as a matter of law.  If the Court identifies any material factual disputes, it may not resolve the dispute.  Boston Five Cents Sav. Bank v. Sec'y of the Dep't of Hous. and Urban Dev., 768 F.2d 5, 11-12 (1st Cir. 1985); see Cowell v. Hale (In re Hale), 289 B.R. 788, 791-93 (B.A.P. 1st Cir. 2003).

### A. Undisputed Facts

The undisputed summary judgment record, consisting of affidavits of the Trustee and the Debtor, supported with various documents, establishes the following. The Debtor filed a chapter 13 bankruptcy petition on April 28, 2005 (the "Petition Date"). At the time she filed her petition, the Debtor was a self-employed real estate broker working for Wolfeboro Bay Real Estate, LLC ("WBR"). On the Petition Date, the Debtor had already completed two sales of real estate which were pending in escrow but waiting to close. The sales contract for the first transaction was signed on January 26, 2005 (the "Germain/Greenwald Deal") with a closing date scheduled for early June 2005. The sales contract for the second transaction was signed on February 26, 2005 (the "Livingston/Caine Deal") with a closing date scheduled for late June 2005. The Germain/Greenwald Deal closed on June 15, 2005 and the Debtor received a net commission of $22,750.00.[2] The Livingston/Caine Deal eventually closed on August 10, 2005[3] and the Debtor received a net commission of $19,202.40. On September 9, 2005, upon consideration of the chapter 13 trustee's motion to dismiss or convert, and with the Debtor's consent, the Court entered an order converting the chapter 13 case to chapter 7 (Doc. No. 42) (the "Conversion Date"). The Plaintiff was appointed as the chapter 7 trustee of the Debtor's bankruptcy estate

---

[2] There appears to be a factual dispute about how much the Debtor actually received from this deal, which may impact how much the Trustee should recover. While the Debtor earned a net commission of $22,750.00, WBR withheld $10,000.00 as reimbursement for advances to the Debtor leaving the Debtor with only $12,750.00. WBR made two advances totaling $10,000.00—on April 22, 2005 for $5,100.00 and June 10, 2005 for $4,900.00—one of which was prepetition.

[3] The Debtor was terminated prior to the closing of the Livingston/Caine Deal, however, she still received her commission.

4

shortly thereafter.  After investigation, the Plaintiff commenced this adversary proceeding to recover the commission proceeds.[4]

  **B.**  **Analysis**

  The Plaintiff argues the real estate commissions, totaling $41,952.40, were earned prepetition and are therefore property of the estate under § 541(a) and subject to turnover under § 542(a).  The Plaintiff posits that New Hampshire law provides that a real estate broker is entitled to a commission if he or she procures a ready, willing, and able buyer to purchase the property.  Since the Debtor had obtained signed sales contracts on two sales prepetition, any commissions received postpetition are property of the Debtor's chapter 7 estate.  The Debtor did not object to Plaintiff's SJ Motion but instead filed her own summary judgment motion.  The Debtor argues she had no enforceable right to the commissions because her employment agreement with WBR provided that any commissions would not be given to the broker until three days after WBR received the proceeds, and, therefore, she had no legal interest until the commissions were received by WBR.  The Debtor alternatively argues that even if the commissions were property of the estate when she filed her chapter 13 case, when her case was converted to chapter 7, property of the estate did not include the commissions since they were used to pay her expenses during her chapter 13 case and the proceeds were no longer in her possession or control as required by § 348(f)(1)(A). The Plaintiff responded by asserting that § 1306(a) augments the normal "property of the estate" definition in § 541 by including property a debtor acquires or earns from services after the commencement of the case.  The filing of a chapter 13, Plaintiff

---

[4] In her initial complaint, the Trustee sought a total of $162,494.75 in commissions representing six transactions.  The Trustee later amended her complaint to further reduce the amount to $41,952.40 after reviewing documents provided by WBR which indicated the other transactions occurred postpetition and, therefore, were not property of the estate.

contends, should not provide a debtor with freedom to use property of the estate to the detriment of creditors.

### 1. Property of the Estate on the Petition Date

Section 541(a)(1) of the Bankruptcy Code creates an estate upon the filing of a bankruptcy petition that includes "all legal or equitable interests of the debtor in property as of the commencement of the case." Section 541(a)(1) is construed broadly and while the meaning of the language is a matter of federal law, the existence and extent of a debtor's interest is ordinarily governed by state law. Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.), 482 F.3d 15, 17 (1st Cir. 2007) (citing Butner v. United States, 440 U.S. 48, 54-55 (1979)); Pasteurized Eggs Corp. v. Bon Dente Joint Venture (In re Pasteurized Eggs Corp.), 296 B.R. 283, 289 (Bankr. D.N.H. 2003). The definitive test for determining whether postpetition income of the debtor will be deemed property of the estate is whether that income accrues from postpetition services of the debtor. Boyle v. Stefurak (In re Sloan), 32 B.R. 607, 611 (Bankr. E.D.N.Y. 1983). Property of the bankruptcy estate will include a debtor's commission "if all acts of the debtor necessary to earn it are rooted in the pre-bankruptcy past." Id. (citing Segal v. Rochelle, 382 U.S. 375, 380 (1966)).

The Debtor's employment agreement with WBR incorporated a "Policies and Procedures Manual" (the "Manual") which sets forth several provisions on commissions. The Manual provides that "[c]ommissions will be paid to salespersons within three working days after [the] Company has received the gross commission." The Manual also provides that when a client refuses to pay a fee, the Company "will have sole discretion as to the legal remedies to be taken to collect the commission, and will not be bound to do so. If the Company elects to take legal

action, the costs of the action will be borne by the Company and the salesperson in the same proportion as the commission would have been split."

The extent of the Debtor's interest in the commissions is governed by New Hampshire law. "When interpreting a written agreement, [New Hampshire courts] give the language used by the parties its reasonable meaning, considering the circumstances and the context in which the agreement was negotiated, and reading the document as a whole." Behrens v. S.P. Constr. Co., Inc., 153 N.H. 498, 503 (2006). "Absent ambiguity, the parties' intent will be determined from the plain meaning of the language used in the agreement." Id. The Court finds that the provisions in the Manual show the Debtor had a legal interest in the commission from each sale upon procuring a buyer who was ready, willing, and able to purchase the property to be sold upon the terms proposed by or acceptable to the seller and not three days after WBR received the commission proceeds. See Blais v. Remillard, 138 N.H. 608, 610 (1994); see also Coldwell Banker v. Pauson, 138 N.H. 666, 668-69 (1994); Belleau v. Hopewell, 120 N.H. 46, 52 (1980) ("A broker earns a commission when he is the effective cause of the sale of property which he is authorized to sell. It is not necessary that the broker participate in the final negotiations leading to the sale.") (citations omitted).

The Manual provides that commissions will be <u>paid</u> to salespersons within three days after receipt, but says nothing about when a sale triggers a legal entitlement to the commission. Moreover, the provision dealing with legal action to collect implies that if a client refuses to pay a fee, WBR and the salesperson would split the costs of maintaining legal action to collect a fee that had already been earned. The costs of any such action would be borne by the Company and the salesperson "in the same proportion as the commission would have been split." This

language suggests the salesperson had already earned his or her commission but the client refused to pay after the deal closed.  If a client had not paid WBR the appropriate fee and the Debtor had not "earned" the commission because WBR had not received the proceeds, there would be no reason to share the costs of litigation to collect the fee in proportion to how the commission would have been split.  Given the absence of any contrary provisions, the commissions were earned when the Debtor secured buyers who were ready, willing, and able to purchase the properties upon acceptable terms.

Under similar circumstances, other courts have held that commissions pending in escrow at the time a debtor filed a bankruptcy petition were earned prepetition and were property of the estate subject to turnover.  See Parsons v. Union Planters Bank (In re Parsons), 280 F.3d 1185, 1188 (8th Cir. 2002) (finding debtor's interest in real estate sales contracts signed prepetition for which she had not been paid a commission at the time she filed bankruptcy were earned prepetition); Tulley v. Taxel (In re Tulley), 202 B.R. 481, 484-85 (B.A.P. 9th Cir. 1996) (finding debtor's commissions from sales pending in escrow were earned prepetition even though the commission agreement provided for payment only upon completion of escrow).  The Debtor here had likewise already earned the commissions on the Petition Date; she was just waiting to be paid.

The Court also notes that the courts in both Tulley and Parsons were construing a debtor's interest in commissions under state laws that provided, like New Hampshire law, that a broker earns a commission when he or she produces a buyer ready, willing, and able to buy on terms specified by the seller, whether or not the sale is completed.  See Parsons, 280 F.3d at 1188 (Missouri law); Tulley, 202 B.R. at 483-84 (California law); cf. Johnson v. CMT Holding,

8

Ltd. (In re Taylor & Campaigne, Inc.), 149 B.R. 993, 996 (Bankr. M.D. Fla. 1993); Goldberg v. Scanlon (In re Scanlon), 10 B.R. 245, 247-48 (Bankr. S.D. Cal. 1981).

For these reasons, the Court agrees with the Plaintiff that the Debtor had earned the commissions at the time the sales contracts were signed, and, therefore, the commissions were property of the estate on the Petition Date.[5]

### 2. Effect of § 348(f)(1)(A) on Conversion and Use of Preconversion Chapter 13 Estate Property by a Debtor

Having resolved the property of the estate issue, the Court must next resolve two other issues raised by the parties: (a) whether the proceeds remained in the estate upon conversion of the Debtor's chapter 13 case to chapter 7 within the meaning of § 348(f)(1)(A), and (b) whether the Debtor had the ability to use the commission proceeds during administration of her chapter 13 case prior to that conversion. The Court now turns to these related questions.

#### a. Property of the Estate Upon Conversion Under § 348(f)(1)(A)

Section 348(f)(1)(A) provides:

> Except [when a debtor converts in bad faith], when a case under chapter 13 of this title is converted to a case under another chapter under this title . . . property of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion.

The Bankruptcy Reform Act of 1994 added subsection (f) to § 348 to clarify that Congress did not want courts to include in postconversion chapter 7 estates the property acquired by the debtor during the preconversion chapter 13 case. 3 Lawrence P. King, Collier on Bankruptcy ¶ 348.07[1] (Alan N. Resnick & Henry J. Sommer eds., 15th rev. ed. 2008) (hereinafter Collier on

---

[5] WBR itself also apparently treated the Debtor as having earned her commissions once the sales contracts were signed because WBR still paid the Debtor her commission after the Livingston/Caine Deal closed even though the Debtor's employment was terminated prior to that closing.

Bankruptcy).  Congress was concerned that a contrary rule would greatly dissuade debtors and create a serious disincentive to chapter 13 filing because debtors would fear that property acquired after filing could be lost if the case were converted.  Id. (citing H.R. Rep. No. 835, 103d Cong., 2d Sess. 57 (1994)).  The House Report explicitly adopted the reasoning of In re Bobroff, 766 F.2d 797 (3d Cir. 1985) as the result it wanted to reach by adding § 348(f).  The Third Circuit in Bobroff rejected the argument that a debtor's tort causes of action that accrued while his case was proceeding under chapter 13 were property of the estate upon conversion to chapter 7.  Bobroff, 766 F.2d at 803.  The court noted that preventing property acquired by the debtor after filing a chapter 13 case from being included in a later chapter 7 estate after conversion is consistent with the Bankruptcy Code's goal of encouraging debt repayment plans rather than liquidation.  "If debtors must take the risk that property acquired during the course of an attempt at repayment will have to be liquidated for the benefit of creditors if chapter 13 proves unavailing, the incentive to give chapter 13—which must be voluntary—a try will be greatly diminished."  Id.; see also Young v. Key Bank of Maine (In re Young), 66 F.3d 376, 378-79 (1st Cir. 1995) (noting that § 348(f)(1)(A) did not apply because of the amendment's bar on retroactive application but nonetheless adopting the reasoning of Bobroff to find that postpetition income earned by and contributed to a chapter 13 estate did not, upon conversion, become property of the chapter 7 estate).

   The Debtor believes she has an implicit right under § 348(f)(1)(A) to use the commission proceeds during her pending chapter 13 case to pay legitimate expenses because the statute qualifies the property of the estate definition to only include property "that remains in the possession of or is under the control of the debtor on the date of conversion."  11 U.S.C. §

348(f)(1)(A). The Plaintiff counters that § 1306(a)[6] enlarges the property of a chapter 13 debtor's estate to include property acquired postpetition and a debtor has no right to use that postpetition property to the detriment of creditors absent confirmation of a plan under § 1327(b). The Plaintiff cites Wyss v. Fobber (In re Fobber), 256 B.R. 268 (Bankr. E.D. Tenn. 2000) for this proposition. The Court in Fobber distinguished the facts of that case from other cases interpreting § 348(f)(1)(A) because the debtors in those other cases did not earn or had no entitlement to the property involved until after filing for chapter 13 relief. See Fobber, 256 B.R. at 278 ("In the instant case, however, the property acquired by the debtors during the chapter 13, i.e., the sale proceeds, became property of the estate, not because of the chapter 13 and its expanded definition of property of the estate [under § 1306(a)] but because it was proceeds of property held by the debtors at the bankruptcy case's commencement [under § 541(a)]."). The Court agrees with the Plaintiff's basic position albeit for slightly different reasons and with certain qualifications.

The court in Fobber identified an important factual distinction that placed that case on different footing than most other cases dealing with § 348(f)(1)(A). The debtors in Fobber owned an unencumbered tractor when they filed for chapter 7 bankruptcy. Id. at 271. Their case was subsequently converted to chapter 13 and, during the chapter 13 phase of the case, the debtors sold the tractor for $35,000.00 and distributed the proceeds from the sale to their creditors. Id. After reconversion to chapter 7, the chapter 7 trustee brought an adversary complaint seeking revocation of the debtors' discharge and the debtors in response put forth a

---

[6] 11 U.S.C. § 1306(a) provides in relevant part: "[p]roperty of the estate includes, in addition to the property specified in section 541 of this title—all property . . . that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted to a case under chapter 7, 11, or 12 . . . ."

11

similar argument to the Debtor in this case: mainly that because the tractor was sold and the proceeds were distributed during the chapter 13, both the tractor and the proceeds were no longer in the debtors' possession at the time of conversion and neither were property of the chapter 7 estate under § 348(f)(1)(A). Id. at 275-76. The court in Fobber rejected this argument reasoning that a literal application of § 348(f)(1)(A) to the facts of the case would "lead to an absurdity" and was "contrary to Congressional intent." Id. at 277. The chapter 13 status of the case—requiring an expanded "property of the estate" under § 1306(a)—did not render the proceeds from the tractor property of the estate when they otherwise would not have been. Id. at 278. The sale proceeds from the tractor would have been property of the estate under § 541(a)(6) regardless of whether the debtors stayed in chapter 7 or converted to chapter 13. Id. Thus, application of § 348(f)(1)(A) was unnecessary to encourage debtors to file chapter 13 and would not penalize debtors for choosing the route of debt repayment over liquidation. Id.

Here, the Debtor had earned the commissions at the time of the Petition Date and so the proceeds were in fact property of the estate at the bankruptcy case's commencement. Notably, "[u]nder section 348(f), it is clear that, in most cases, the property that came into the estate only because of section 1306(a) is not included in the estate in the converted case." 8 Collier on Bankruptcy ¶ 1306.04. However, § 1306(a) is inapplicable to this case for the same reasons identified in Fobber. The property in question—the real estate commission proceeds—were not included in the estate because of § 1306(a) but were part of the estate because of § 541(a) for the reasons already stated by the Court above.[7]

---

[7] Any distinction one might be able to draw between the Debtor's intangible legal "interest" that existed on the Petition Date, i.e., her entitlement to the commissions already earned, and the proceeds later derived from that interest received postpetition makes no difference for "property of the estate" purposes. Section 541(a) is broadly defined to encompass "all legal or equitable interests of the debtor,"

12

"[By enacting § 348(f)(1)(A)], Congress intended to avoid penalizing debtors for their chapter 13 efforts by placing them in the same economic position they would have occupied if they had filed chapter 7 originally." Fobber, 256 B.R. at 277-78 (citing In re Pearson, 214 B.R. 156, 164 (Bankr. N.D. Ohio 1997)). The Debtor here is not penalized by this outcome. Regardless of whether the Debtor had originally filed chapter 7 or chapter 13, the commission proceeds were property of her bankruptcy estate on the Petition Date under § 541(a). Every other case under § 348(f)(1)(A), which did not bring property into the converted estate, involved postpetition earnings, claims, or appreciation. E.g., Stamm v. Morton (In re Stamm), 222 F.3d 216 (5th Cir. 2000) (debtor's wages earned after filing chapter 13 petition and before discharge under chapter 7 are not part of the converted estate); Motor Coach Indus., Inc. v. Drewes (In re Rosenberg), 303 B.R. 172 (B.A.P. 8th Cir. 2004) (debtor's claim for suspension and termination against former employer arose after chapter 13 petition and was not property of the chapter 7 estate); Farmer v. Taco Bell Corp. (In re Farmer), 242 B.R. 435 (W.D. Tenn. 1999) (slip-and-fall cause of action accrued after chapter 13 petition); In re Sparks, 379 B.R. 178 (Bankr. M.D. Fla. 2006) (any postpetition, preconversion appreciation in the value of property in chapter 13 goes to the debtor following conversion to chapter 7); In re Bejarano, 302 B.R. 559 (Bankr. N.D. Ohio

---

including compensation due on a contract. E.g., Affiliated Computer Sys., Inc. v. Sherman (In re Kemp), 52 F.3d 546 (5th Cir. 1995). "The conditional, future, speculative, or equitable nature of an interest does not prevent it from being property of the bankruptcy estate." Id. at 550. Thus, "proceeds . . . from property of the estate" acquired after the case is commenced are also included in the estate under the Bankruptcy Code. 11 U.S.C. § 541(a)(6); see United States v. Messner, 107 F.3d 1448 (10th Cir. 1997) (property not owned by debtor until after filing a bankruptcy petition is included in the bankruptcy estate when the after-acquired property is comprised of proceeds of estate property); Rau v. Ryerson (In re Ryerson), 739 F.2d 1423 (9th Cir. 1984) (debtor's termination payment, contingent until eight months after commencement of a chapter 7 case, must be prorated with that portion based on commissions earned before bankruptcy included as property of the estate); see also In re Wegner, 243 B.R. 731 (Bankr. D. Neb. 2000) (home owned by debtor at the time chapter 13 petition was filed became property of chapter 7 estate under § 348(f)(1)(A) because the home remained in possession and control of debtor on conversion date).

2003) (personal injury lawsuit and tax refund that arose after chapter 13 petition are not property of the chapter 7 estate on conversion). Here, however, as already explained, the Debtor's right to the commission proceeds arose prepetition and the proceeds were property of the estate under § 541(a). Therefore, the proceeds were in fact part of the bankruptcy estate upon the Debtor's conversion to chapter 7 under § 348(f)(1)(A).

### b. Use of Preconversion Chapter 13 Estate Property by a Debtor

Unfortunately, this does not end the inquiry under § 348(f)(1)(A) because of the bankruptcy policy concerns raised by the facts of this case. The Court pauses to stress that this decision should not be read as allowing a chapter 7 trustee to pursue and recover any and all former chapter 13 estate property that was in the estate under § 541(a) but is no longer in possession or control of the debtor in a converted case under § 348(f)(1)(A).[8] Such a per se rule would create unnecessary friction between § 348(f)(1)(A) and the more practical considerations of a chapter 13 case. Just as a chapter 7 trustee should not be able to recover all former chapter 13 estate property no longer in a debtor's possession or control, neither should a debtor be given unlimited ability to dispose of chapter 13 estate property before a plan is confirmed or before the case is converted. A leading bankruptcy treatise had identified the specific issue:

> Section 348(f)(1)(A) could reward shenanigans by debtors in failing Chapter 13 cases. If property of the estate in the converted case consists only of property that

---

[8] In the typical bankruptcy case, when a wage-earner debtor files his or her petition for relief, the petition date does not square neatly with the end of a debtor's pay period. On the petition date, a debtor earning a weekly, bi-weekly or monthly salary almost always has earnings that he or she is entitled to from prepetition services that will be paid postpetition, and that are considered property of the bankruptcy estate under § 541(a). Normally, a chapter 7 trustee in a case converted from chapter 13 would not be concerned with pursuing a small portion of a single paycheck because the time and cost to pursue such earnings would outweigh any benefit to the estate. Only in cases such as this, where a debtor does not earn a steady salary but receives her pay in large, intermittent lump sums (or perhaps in cases where a debtor earned a large bonus) would a turnover action under § 542 be worthwhile.

> "remains in the possession of or is under the control of the debtor on the date of conversion," then debtors have incentives to relinquish possession and control of assets during the Chapter 13 case. Can the debtor deplete the (potential) Chapter 7 estate by strategically transferring assets during the Chapter 13 case? If neither the plan nor the order of confirmation preserved the estate from the vesting effect of § 1327(b), the debtor can dispose of the estate during the Chapter 13 case, without violating any provision of the Bankruptcy Code. Would lawful preconversion asset transfers constitute "bad faith" for purposes of new 348(f)(2)?

4 Keith M. Lundin, Chapter 13 Bankruptcy § 316.1, at 316-18 to -19 (3d ed. 2000 & Supp. 2004) (footnotes omitted).

For the reasons provided below, the Court agrees with the Debtor's argument that she has an implicit right to use chapter 13 estate property, provided such use is for lawful purposes, e.g., ordinary and necessary living expenses, and the later conversion to chapter 7 is not in bad faith or done with the intent to hinder, defraud, or delay a creditor or trustee.

The Bankruptcy Code gives a chapter 13 debtor certain rights over the chapter 13 estate. A chapter 13 debtor is vested with the exclusive right to use and control all property of the estate. 11 U.S.C. § 1303. A debtor also remains in possession of all property of the chapter 13 estate, except as provided in a confirmed plan or order confirming a plan. 11 U.S.C. § 1306(b). The Bankruptcy Code, however, does not contain any explicit provision that governs what a debtor can do with chapter 13 estate property while the debtor is waiting to have a proposed plan confirmed. Presumably a debtor must be able to use earnings to pay ordinary and necessary living expenses in that interim gap period.

> Congress apparently felt that there was no need to explicitly state the right of a nonbusiness chapter 13 debtor to use property in the ordinary course of the debtor's affairs, since section 1306(b) expressly authorizes the chapter 13 debtor to retain possession of all property of the estate. It seems extremely doubtful that Congress would have intended to require notice and a hearing as a prerequisite to the normal use of property of the estate, including postpetition earnings, household goods, vehicles and residential property, in a case commenced by a

15

>debtor not engaged in business.  The administrative burdens and uncertainties
>attendant upon such a radical departure from Chapter XIII practice [under the
>former Bankruptcy Act of 1898] would be a substantial deterrent to chapter 13
>use by nonbusiness debtors.

8 Collier on Bankruptcy ¶ 1303.02.  If chapter 7 trustees were given free reign under § 348(f)(1)(A) to recover former chapter 13 estate property no longer in the debtor's possession or control, it would stifle the policies inherent in the Bankruptcy Code favoring debt repayment over liquidation.  Section 1303 vests within a chapter 13 debtor the powers conferred upon a trustee under § 363(d).  Section 363(d) in turn empowers a trustee to use, sell, or lease property of the estate under § 363(b) and (c), subject to limitations imposed by the automatic stay provisions in § 362(c), (d), (e), and (f).[9]  Therefore, subject to those limitations, "a chapter 13 debtor authorized to continue in business [under § 1304] is also empowered to use, sell or lease property of the estate in the ordinary course of business, without notice or a hearing."[10]  8 Collier on Bankruptcy ¶ 1303.03[1].  Similarly, a chapter 13 debtor not engaged in business under § 1304 should have the same rights and powers to use property of the estate.

>The debtor's right to use or lease property of the estate in the ordinary course of
>his or her affairs is also implicit in section 1306(b), which provides that the debtor
>has the right to possession of all property of the chapter 13 estate, except as
>otherwise provided by a confirmed plan or order confirming the plan.

8 Collier on Bankruptcy ¶ 1303.03[1] (emphasis added).  At least one other bankruptcy court has identified this implicit ability of a chapter 13 debtor to use property of the estate for ordinary and

---

[9] The most important of these restrictions prohibits the use, sale, or lease of cash collateral by the debtor or trustee, unless the entity with an interest in the cash collateral has consented or the court has authorized the use, sale, or lease after notice and a hearing.  See 11 U.S.C. § 363(c)(2); Fed. R. Bankr. P. 4001(b) and (c).

[10] A debtor engaged in business is one who is "self-employed and incurs trade credit in the production of income from such employment . . . ."  11 U.S.C. § 1304(a).

necessary living expenses.  See In re Fisher, 198 B.R. 721, 733 n.18 (Bankr. N.D. Ill. 1996) ("Chapter 13 debtors have authority under [s]ection 1303 to deal with estate property in the ordinary course, which should include expending estate property for ordinary living expenses. Only extraordinary purchases, sales, and credit transactions should require court approval."), rev'd on other grounds by City of Chicago v. Fisher (In re Fisher), 203 B.R. 958 (N.D. Ill. 1997). Also, at least one other court has similarly addressed this issue, although not directly on all fours with the facts in this case.  See In re Brown, 375 B.R. 362, 381 (Bankr. W.D. Mich. 2007) (declining to interpret § 348(f)(1)(A) as "implicitly empowering Chapter 7 trustee's [sic] in converted cases to recover property lawfully removed from the estate in the prior chapter proceeding") (emphasis added).

Therefore, the Court finds that §§ 1303 and 1306(b) together provide the implicit right for a chapter 13 debtor to use property of the estate for ordinary and necessary living expenses provided that use is not in bad faith.  Property of the Debtor's converted chapter 7 estate will for that reason consist of the property in the chapter 13 estate on the Petition Date under § 541(a) less those amounts lawfully removed by the Debtor in good faith to pay ordinary and necessary living expenses during the period from the Petition Date to the Conversion Date.

The Court will not attempt to adopt a bright-line rule to define under what circumstances (and for what purposes) a debtor may use chapter 13 estate property other than to stress the use must be reasonable and will usually include normal living expenses, e.g., bills, rent, etc.  Exactly what are "ordinary" and "necessary" living expenses depend upon the facts of each case but certainly there are outside limits.  Debtors should be cautioned that this right cannot be abused and will normally be tempered by one of the underlying concepts of the Bankruptcy Code—a

fresh start is only available to the honest debtor.  See Grogan v. Garner, 498 U.S. 279, 286-87 (1991) (noting the "fresh start" policy is limited to the "honest but unfortunate debtor") (citing Local Loan Co. v. Hunt, 292 U.S. 234, 244 (1934)); see also Hannigan v. White (In re Hannigan), 409 F.3d 480, 483 (1st Cir. 2005) ("A bankruptcy court is entitled to insist upon filings and representations made in the utmost good faith.").  Moreover, chapter 7 trustees who seek former chapter 13 estate property under circumstances indicating abuse can be comforted by the availability of § 727 as a potential remedy.

The Court notes that this case is complicated by the fact that the proposed chapter 13 plan was never confirmed.  The Debtor in this case also never transmitted any funds to the chapter 13 trustee prior to conversion.  See Doc. No. 44.  In addition, it appears that the Debtor obtained two advances on her commissions from her employer, one prepetition and one postpetition.  See footnote 2.  What impact the receipt and use of such advances may have remains to be determined on a proper evidentiary record.  While these facts and circumstances will be important to the ultimate resolution of this dispute, any further inquiry by the Court is unnecessary at this point to resolve these cross-motions for summary judgment.

### III. CONCLUSION

For the reasons stated above, the Court finds that the commission proceeds were property of the Debtor's chapter 13 bankruptcy estate on the Petition Date under § 541(a).  The Plaintiff may seek turnover of the Debtor's real estate commission proceeds under § 542 but the success of that recovery will depend upon the amount of such proceeds still held by the Debtor on the Conversion Date and her use of such proceeds prior to that date.  The Court shall issue a separate

order which: (1) grants the Plaintiff's SJ Motion in part on the property of the estate issue under § 541(a) subject to adjustment for legal transfers and uses of such proceeds between the Petition Date and the Conversion Date; (2) denies the Defendant's SJ Motion as to both liability and on the right to use the commission proceeds under §§ 1303 and 1306 since factual issues remain for trial; and (3) directs the parties to consult with each other and contact the calendar clerk within fifteen days to obtain a trial date.  This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052.

ENTERED at Manchester, New Hampshire.


Date:   November 12, 2008                             /s/ J. Michael Deasy
                                                     J. Michael Deasy
                                                     Bankruptcy Judge